Brian Murphy
Lindsay Stone
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
bmurphy@sheppardmullin.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

PATRICK RANKINE, individually and on behalf
of all others similarly situated,

                    Plaintiff,

             v.

LEVI STRAUSS & CO.,[1]

                  Defendant.

------------------------------------------------------------ x

Civil Action No. 1:22-cv-03362-VSB-SDA

 

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS THE COMPLAINT OR STAY PROCEEDINGS,
<u>OR IN THE ALTERNATIVE, STRIKE THE CLASS ALLEGATIONS</u>**

---

[1]       Levi's Only Stores, Inc. is the name of the proper corporate entity.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT ALLEGATIONS.....................................................................................2

    A.    Factual Allegations ...................................................................................2

    B.    History of Payroll Frequency Complaints & Current Appeals...................3

ARGUMENT.................................................................................................................5

    I.    The Court Should Dismiss Plaintiff's §191 Claim For Jurisdictional And
Substantive Reasons.................................................................................5

    A.    Plaintiff Does Not Have Standing To Pursue A §191 Claim......................5

        1.    Applicable Standard.........................................................................5

        2.    Plaintiff Has Not Identified Any "Injury In Fact" And
Alleged Only Hypothetical Injuries ................................................6

    B.    Plaintiff Fails To State A Claim For Relief Because §191 Does Not
Provide A Private Right Of Action ...........................................................8

        1.    The Court Is Not Bound To Follow *Vega*.......................................8

        2.    The Court Should Decline To Follow *Vega* Because it
Rests On An Unsound Statutory Interpretation That
Produces An Absurd Result .............................................................9

        3.    The Legislative History & Enforcement Scheme Of
Sections 191 and 198(1-a) Support That No Private Right
of Action Exists..............................................................................11

        4.    *Vega's* Creation Of A Private Right of Action Contravenes
Recent Court Of Appeals Authority ..............................................13

        5.    The Cannon of Constitutional Avoidance Supports
Declining to Apply *Vega* ............................................................14

    C.    Plaintiff Fails to State A Claim Because He Has Not Plausibly
Alleged He Was Employed as a "Mechanic, Workingman or
Laborer".................................................................................................15

    II.    If The Court Does Not Dismiss The Complaint, The Court Should Stay
All Proceedings Pending The Outcome Of The *Mabe* And *Grant* Appeals..........16

    A.    Applicable Standard................................................................................17

    B.    The Five *Kappel* Factors Heavily Weigh in Favor of a Stay....................18

    III.    Alternatively, The Court Should Strike All Class Allegations Because The
Putative Class Is An Impermissible "Fail-Safe" Class ..........................................20

A.    Applicable Legal Standard...........................................................................20

B.    A Class Comprised of All "Manual Workers" Is An Impermissible
Fail-Safe Class ............................................................................................21

CONCLUSION.............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Accosta v. Lorelei Events Grp.*
    No. 17-cv-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) ...................................9

*Aerotel, Ltd. v. IDT Corp.*
    No. 03-CIV-6496 (RJH) (FM), 2003 WL 23100263 (S.D.N.Y. Dec. 30, 2003)...................18

*Arciello v. Cty of Nassau*
    No. 16-CV-3974 (ADS) (SIL), 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019) .....................10

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).......................................................................................7

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007).......................................................................................7

*Borgese v. Baby Brezza Enter., LLC*
    No. 20-CIV-1180 (VM), 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) ................................20

*Carrera v. DT Hosp. Grp.*
    No. 19-CV-4235 (RAK), 2021 WL 6298656 (S.D.N.Y. Nov. 1, 2021)..................................8

*Chen-Oster v. Goldman, Sachs & Co.*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012).................................................................20

*Clinton v. Jones*
    520 U.S. 681 (1997).......................................................................................17

*Cortlandt Street Recovery Corp. v. Hellas Telecomm.*
    790 F.3d 411 (2d Cir. 2015)...............................................................................5

*Cruz v. TD Bank*
    22 N.Y.3d 61 (2013) .....................................................................................13

*Davito v. AmTrust Bank*
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) ................................................................20

*Fedotov v. Peter T. Roach & Assocs., P.C.*
    354 F. Supp. 2d 471 (S.D.N.Y. 2005)................................................................21

*Frank Martz Coach Co. v. Wells Fargo Equip. Fin.*
    No. 21-CV-795, 2022 WL 798159 (N.D.N.Y. Mar. 16, 2022) ................................7

*Gardner v. D&D Elec. Const. Co. Inc.*
No. 160249/2018, 2019 WL 3765345 (Sup. Ct. Aug. 09, 2019) .............................................. 9

*Gen Tel. Co. of Southwest. v. Falcon*
457 U.S. 147 (1982) ................................................................................................................ 21

*Gibbons v. Bristol-Myers Squibb Co.*
919 F.3d 699 (2d Cir. 2019) .................................................................................................... 11

*Grant v. Global Aircraft Dispatch, Inc.*
No. 2021-03202 (App. Div. 2d Dep't) .......................................................................... *passim*

*Grant v. Global Aircraft Dispatch*
No. 720074/2019, 2021 WL 6777500 (Sup. Ct. Apr. 20, 2021) .............................................. 9

*Gregory v. Stewart's Shops Corp.*
No. 14-CV-00033, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016) ........................................ 21

*Gregory v. Stewart's Shops Corp.*
No. 14-CV-33, 2016 WL 8290648 (N.D.N.Y. July 8, 2016) .................................................. 21

*HealthNow New York v. New York*
448 F. App'x 79 (2d Cir. 2011) ................................................................................................ 5

*Matter of Howard v. Wyman*
28 N.Y.2d 434 (1971) ............................................................................................................. 16

*Hunter v. Planned Bldg. Servs., Inc.*
No. 715053/2017, 2018 WL 3392476 (Sup. Ct. June 20, 2018) ............................................ 11

*Hussain v. Pak. Int'l Airlines Corp.*
No. 11-CV-932 (ERK) (VVP), 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ....................... 9

*Kamar v. Radio Shack Corp.*
375 Fed. Appx. 734 (9th Cir. 2010) ........................................................................................ 21

*Kappel v. Comfort*
914 F. Supp. 1056 (S.D.N.Y. 1996) .................................................................................. 17, 18

*Konkur v. Utica Academy of Science Charter School.*
38 N.Y.3d 38 (2022) ............................................................................................................... 13

*Landis v. N. Am. Co.*
299 U.S. 248 (1936) ................................................................................................................ 17

*LaSala v. Needham & Co.*
399 F. Supp. 2d 421 (S.D.N.Y. 2005) ..................................................................................... 17

*Lifrak v. New York City Council*
   389 F. Supp. 2d 500 (S.D.N.Y. 2005)...................................................5

*In re Literary Works in Elec. Databases Copyright Litig.*
   No. 00-CIV-6049, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)..............................19

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)...................................................................6

*Mabe v. Wal-Mart Associates, Inc.*
   No. 1:20-cv-00591 (N.D.N.Y.)................................................ *passim*

*Maddox v. Bank of New York Mellon Trust Co.*
   19 F.4th 58 (2d Cir. 2021) ........................................................6, 7

*Mahon v. Ticor Title Ins. Co.*
   683 F.3d 59 (2d Cir. 2012)...........................................................5

*Marshel v. AFW Fabric Corp.*
   552 F.2d 471 (2d Cir. 1977).........................................................17

*Martin v. Dist. of Columbia Court of Appeals*
   506 U.S. 1 (1992)...................................................................20

*Mayfield v. Asta Funding, Inc.*
   95 F. Supp. 3d 685 (S.D.N.Y. 2015)..................................................20

*Mazzei v. Money Store*
   288 F.R.D. 45 (S.D.N.Y. 2012) ..................................................21, 22

*McNamee v. Clemens*
   No. 09-CV-1647 (SJ) (CLP), 2014 WL 1682025 (E.D.N.Y. Apr. 28, 2014)..................20

*Missouri Pac. R. Co. v. Tucker*
   230 U.S. 340 (1913).................................................................14

*Netram v. New York State Indus. Bd. of Appeals*
   78 N.Y.S.3d 808 (3d Dep't 2018).....................................................16

*Nypl v. JP Morgan Chase & Co.*
   No. 15-CIV-9300 (LGS), 2022 WL 819771 (S.D.N.Y. Mar. 18, 2022) .....................22

*Phillips v. Max Finkelstein, Inc.*
   115 N.Y.S. 3d 866 (Sup. Ct. Dec. 12, 2019) ..........................................9

*Pierre v. Prospect Mortg., LLC*
   No. 13-CV-453 NAM/RFT, 2013 WL 5876151 (N.D.N.Y. Oct. 31, 2013) ....................18

*Randleman v. Fidelity Nat'l title Ins. Co.*
   646 F.3d 347 (6th Cir. 2011) ...................................................................................21

*Rosario v. Icon Burger Acquisition LLC*
   No. 21-CV-4313, 2022 WL 198503 (E.D.N.Y. Jan. 21, 2022) ............................6, 8

*Rothstein v. UBS AG*
   708 F.3d 82 (2d Cir. 2013)....................................................................................15

*Rovi Guides, Inc. v. Comcast Corp.*
   No. 16-CV-9278 (JPO), 2017 WL 4876305 (S.D.N.Y. Oct. 27, 2017)...................18

*Sikhs v. Justice v. Nath*
   893 F. Supp. 2d 598 (S.D.N.Y. 2012)....................................................................17

*Sorto v. Diversified Maint. Sys., LLC*
   No. 20-CV-1302 (JS) (SIL), 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020)............8

*Spokeo v. Robins*
   578 U.S. at 340 (2016) .........................................................................................7, 8

*St. Louis, I.M. & S. Ry. Co. v. Williams*
   241 U.S. 63 (1919).................................................................................................14

*Summers v. Earth Insland Inst.*
   555 U.S. 488 (2009)..................................................................................................7

*Sw. Tel. & Tel. Co. v. Danaher*
   238 U.S. 482 (1915)...............................................................................................14

*TransUnion LLC v. Ramirez*
   141 S. Ct. 2190 (2021)..............................................................................................6

*U.S. v. Awadeallah*
   349 F.3d 42 (2d Cir. 2003).....................................................................................13

*U.S. v. Bajakajian*
   524 U.S. 321 (1998)...............................................................................................14

*United States v. Town of Oyster Bay*
   66 F. Supp. 3d 285 (E.D.N.Y. 2014) .....................................................................19

*Van Elzen v. Glob. Strategy Grp., LLC*
   No. 20-CV-3541 (JPO), 2021 WL 185328 (S.D.N.Y. Jan. 19, 2021)....................17

*Vega v. CM & Associates Construction Management, LLC*
   107 N.Y.S.3d 286 (1st Dep't 2019) ............................................................... *passim*

*Warth v. Seldin*
    422 U.S. 490 (1975)...................................................................................................7

*Zivkovic v. Laura Christy, LLC*
    No. 17-CV-553-GHW, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022)....................9

## Statutes

Fair Labor Standards Act § 16(b) ...........................................................................9, 10

New York Labor Law §190 ...........................................................................................15

New York Labor Law § 191 .................................................................................. *passim*

New York Labor Law §195 ...........................................................................................13

New York Labor Law §198 .................................................................................. *passim*

New York Labor Law §218 ...........................................................................................12

## Other Authorities

Empire State Development, Annual Report on the State of Small Businesses 3 (2002)................3

5-23 *Moore's Fed. Practice* 3d § 23.82 ......................................................................21

Defendant Levi's Only Stores, Inc. ("Defendant" or "Levi's," improperly designated as "Levi Strauss & Co."), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiff Patrick Rankine ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) or, alternatively, to Strike Plaintiff's Class Definition pursuant to Federal Rule of Civil Procedure 23(d)(i)(D), and for an order staying further proceedings in this action pending the resolution of the appeals in *Mabe v. Wal-Mart Associates, Inc.*, No. 1:20-cv-00591 (N.D.N.Y.) and *Grant v. Global Aircraft Dispatch, Inc.*, App. Div. No. 2021-03202 (2d Dep't).

## PRELIMINARY STATEMENT

Plaintiff is a former Levi's retail seasonal employee. He concedes he was paid all wages to which he was entitled, and in this action seeks only liquidated damages on the theory that half of his paychecks were one-week late under §191 of the New York Labor Law as he was paid on a bi-weekly basis. Plaintiff's claim, a mirror image of hundreds that have been filed in New York in the last year threatening ruinous financial liability for large and small employers alike, was not plausible prior to 2019. That changed, however, when the New York Appellate Division for the First Department issued a brief, seven paragraph decision in *Vega v. CM & Assoc. Constr. Mgt.*, authorizing "manual workers" to pursue private lawsuits when they are not paid on a weekly basis.

The policy implications of allowing *Vega* to serve as the law of New York are beyond the scope of this Motion. However, its faulty legal reasoning – together with other legal principles counseling in favor of dismissal of the Complaint – are not. Thus, *Vega's* unfounded statutory construction that produces absurd results, its failure to consider statutory legislative history and enforcement mechanisms, and its irreconcilability with constitutional concerns, render it readily susceptible to challenge and support departure from its holding here. Likewise, *Vega* addressed only a piece of the inquiry – whether a private right of action exists under §191 – but did not

1

infringe on the ordinary Article III standing analysis and its inseparable requirement of "harm," which is patently lacking from the allegations here. And *Vega* did not disturb the obligation of a plaintiff to offer sufficient allegations to state a claim, which Plaintiff failed to do here in concluding, without analysis, that he qualifies as a "manual worker" subject to §191.

A proper analysis of these issues should result in dismissal of the Complaint. The Court may alternatively stay these proceedings in anticipation of decisions from the New York Court of Appeals, the United States Court of Appeals for the Second Circuit, and/or the Appellate Division, Second Department, all of which are expected to soon provide further guidance, not only on *Vega's* reasoning, but on whether a private claim under §191 can proceed at all. These appeals, discussed in greater detail below, are fully briefed, well-supported by *amicus curea*, and should arrive in a matter of months, eliminating any prejudice from delay Plaintiff might allege and appropriately conserving the resources of the Parties and this Court.

Accordingly, Levi's respectfully submits that dismissal of the Complaint in its entirety or a stay pending the outcome of these appeals is appropriate.

## RELEVANT ALLEGATIONS

### A.   FACTUAL ALLEGATIONS

Plaintiff alleges that between November 2019 to January 2020 he worked in an unidentified position at a unspecified Levi's store in New York, New York. (Comp. ¶11).[2] Plaintiff alleges that at least 25% of his job responsibilities included tasks such as "unpacking, stocking and organizing inventory, folding clothes, and tending to fitting rooms" and concludes that these activities constitute "manual labor." (*Id.*). Plaintiff concedes in his Complaint that he was paid all

---

[2]   A true and correct copy of the Complaint is attached as Exhibit A to the Declaration of Brian Murphy dated July 7, 2022 ("Murphy Decl.").

earnings he was owed. (*Id.*). However, Plaintiff alleges that he was paid biweekly, such that certain wage payments are alleged to have been made late. (*Id.*).

Plaintiff brings a single count alleging that he was employed as a "manual worker" and was required to be paid weekly, instead of biweekly, pursuant to New York Labor Law §191 ("NYLL"). (Comp. ¶¶18-21). Plaintiff seeks liquidated damages pursuant to §198 of the NYLL. (*Id.* at ¶¶11, 21). Plaintiff purports to bring this Complaint on behalf of all "manual workers" employed by Levi's in the State of New York. (*Id.* ¶12).

**B.     HISTORY OF PAYROLL FREQUENCY COMPLAINTS & CURRENT APPEALS**

The New York Appellate Division, First Department, opened the floodgates for frequency of pay claims in *Vega v. CM & Assoc. Constr. Mgt.*, LLC, 175 A.D.3d 1144 (1st Dep't 2019). There, the First Department recognized a private right of action under §191 for "manual workers" for the first time in the 130 years since the law was passed. Since then, at least 150 cases lodging frequency of pay claims have been filed in New York courts. (Murphy Decl. ¶5).

The proliferation of these cases is disastrous for New York businesses. A "manual worker" paid on a biweekly basis would have a claim for liquidated damages equal to the amount of wages earned for half of the weeks he or she works for up to six years. *See* NYLL §198. If such a hypothetical manual worker earned the applicable New York City minimum wage of $15/hour, he or she would be entitled to $93,600[3] even though already paid 100% of earned wages. Expanding the hypothetical, a small employer with seven employees could be liable for $655,200. According to one recent survey, 72% of New York small businesses have total annual revenues under $1 million, illustrating the scope of the potential impact.[4]

---

[3]     $15/hour x 40 hours/week x 26 weeks/year x 6 years = $93,600.

[4]     *See* Empire State Development, Annual Report on the State of Small Businesses 3 (2002), available at https://esd.ny.gov/sites/default/files/2020-ESD-ANNUAL-REPORT-SMALL-BUSINESS.pdf.) (last visited July 7, 2022).

Small businesses are not the only entities facing potentially ruinous liability.  Although §191 creates an exemption for business who secure permission from the New York Commissioner of Labor to pay manual workers biweekly, an employer must employ, *inter alia*, at least 1,000 employees in New York in order to qualify.  *See* NYLL §191(a)(ii).  Thus, an employer with 999 employees would not be eligible to even apply for the exemption and, under the scenario outlined above, would be liable for $93,506,400.[5]

Indeed, in 2021, the Retail Trade Sector in New York State was responsible for the payment of $36.85 billion in wages.[6]  Only a small fraction of the retail employers responsible for employing workers who benefit from these wages are subject to an exemption from §191, and of those remaining, many likely pay workers on a bi-weekly schedule as is commonplace.  Thus, a substantial portion of half the $36.85 billion in wages paid to retail employees in 2021 is theoretically available in litigation in the form of liquidated damages as a penalty for late payment.  Once the six year limitations period is considered, the theoretical exposure becomes all the more ludicrous.[7]

There are two appeals currently pending in an effort to stave off such absurd outcomes.  In *Mabe v. Wal-Mart Associates, Inc.*, the defendant has sought leave for interlocutory review by either the Second Circuit Court of Appeals or the New York Court of Appeals of a decision from the Northern District of New York denying a motion to dismiss a frequency of pay claim.  *See* Case No. 1:20-cv-00591 (N.D.N.Y.) at ECF No. 40.  Similarly, in *Grant v. Global Aircraft Dispatch, Inc.*, the defendant has sought review of a denial of its motion to dismiss by the Appellate

---

[5]     999 x $15/hour x 40 hours/week x 26 weeks/year x 6 years = $93,506,400.

[6]     *See* New York State Department of Labor, Quarterly Census of Employment and Wages (2021 data) *available at* https://statistics.labor.ny.gov/ins.asp (last visited July 7, 2022).

[7]     From 2016-2021, the total annual wages paid to retail workers in New York State was never less than $31.87B.  *See id.*

Division Second Department.  *See* Docket No. 2021-03202 (App. Div. 2d Dep't).  These appeals have been briefed by the parties and several *amici curiae*, including Counsel to Plaintiff.  *See* Case No. 1:20-cv-00591 (N.D.N.Y.) at ECF No. 49; Docket No. 2021-03202 (App. Div. 2d Dep't) at NYSCEF Doc. Nos. 17, 18.

## ARGUMENT

The Complaint, together with the single frequency of pay claim advanced within, should be dismissed because Plaintiff lacks standing to pursue a claim, there is no private right of action under §191 notwithstanding *Vega*, and Plaintiff has not advanced sufficient allegations to demonstrate that he was employed as a "manual worker."  As an alternative to dismissal, the Court should stay all proceedings pending the outcome of the appeals in *Mabe* and *Grant*, which will provide clarity that may dispense with this entire action.  In either case, however, the Court should strike the class allegations/definition insofar as Plaintiff has formulated a classic "fail-safe" class definition.

## I.   THE COURT SHOULD DISMISS PLAINTIFF'S §191 CLAIM FOR JURISDICTIONAL AND SUBSTANTIVE REASONS

### A.   Plaintiff Does Not Have Standing To Pursue A §191 Claim

#### 1.   Applicable Standard

A claim must be dismissed under Rule 12(b)(1) when a plaintiff fails to allege facts sufficient to establish standing under Article III of the Constitution.  *See Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  "It is beyond cavil that constitutional standing imposes a jurisdictional prerequisite to suit." *Lifrak v. New York City Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005).  Article III of the Constitution "limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).  Accordingly, "[i]n the absence of standing, a court

lacks the requisite subject matter jurisdiction over the case." *HealthNow New York v. New York*, 448 F. App'x 79, 81 (2d Cir. 2011).

Article III standing requires, among other things, that the plaintiff have suffered an "injury in fact" that is concrete and particularized and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 198503, at *2 (E.D.N.Y. Jan. 21, 2022) (Seybert, J.) (quoting *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021)). "No concrete harm; no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021).

### 2. Plaintiff Has Not Identified Any "Injury In Fact" And Alleged Only Hypothetical Injuries

Plaintiff identifies the purported harm he suffered in being paid on a biweekly basis in a single sentence: he was "temporarily deprived of money owed to him, and he could not invest, earn interest on, or otherwise use these monies that were rightfully his." (Comp. ¶11). This is insufficient to meet Article III's threshold requirement.

In *Rosario*, the Eastern District addressed the specificity of allegations necessary to articulate a sufficient harm in the context of a §191 claim. *See* 2022 WL 198503, at *2. While the Court held that "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under NYLL §§191 and 198," the Court noted that factual allegations "demonstrating that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled," are necessary. *Id.* The Court further emphasized that "a plaintiff must plead enough facts to make it plausible that he did indeed suffer the sort of injury that would entitle him to relief." *Id.* at *3 (internal quotation marks omitted).

Plaintiff's perfunctory allegation falls short.  Plaintiff has offered no allegations concerning his financial strategies or investment practices that would have increased the value of any funds, nor has Plaintiff advanced any allegations concerning what, if anything, he would have done with a given paycheck if he received the amount a week earlier.  Plaintiff's allegations are entirely based on what he *could have* done during the week he was allegedly deprived of such funds.  Such allegations simply mimic a conclusion about an alleged harm, without any supporting facts that render that conclusion anything more than speculative, hypothetical and implausible.

The paucity of such supporting allegations fail to "nudge" Plaintiff's claim "across the line from conceivable to plausible" and the Complaint must therefore be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975) (explaining that a plaintiff "must allege *specific*, *concrete facts* demonstrating [how the defendant's] challenged practices harm[ed] him," and "[a]bsent the necessary allegations of *demonstrable*, *particularized injury*," a complaint must be dismissed) (emphasis added); *accord Frank Martz Coach Co. v. Wells Fargo Equip. Fin.*, No. 21-CV-795, 2022 WL 798159, at *3 (N.D.N.Y. Mar. 16, 2022) (allegations that plaintiffs were placed "at risk of default in other commercial obligations in the amount of $20,000,000" by defendant's actions failed to constitute an injury-in-fact sufficient to confer Article III standing because plaintiffs failed to "identif[y] to whom they would default," or "how those obligations constitute $20 million, or how that risk would be so substantial that it would cause them to reasonably incur costs to mitigate th[at] harm").

Indeed, Plaintiff's allegations are akin to the "nebulous risk of" potential harms that the Second Circuit has held cannot "form the basis of Article III standing" because such allegations simply describe various potential injuries that might have arisen, but which were not specifically

alleged to have occurred.  *See Maddox*, 19 F.4th at 65.  Listing a range of potential harms is not the equivalent of alleging "an injury in fact [that is] both concrete *and* particularized." *Spokeo*, 578 U.S. at 340; *see also Summers v. Earth Insland Inst.*, 555 U.S. 488, 495-96 (2009) (allegations "[t]here may be a chance" of injury do not satisfy Article III as "vague" allegations of possible injury do "not support a finding of the 'actual or imminent' injury that our cases require," because deprivation of a "right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing").

In short, Plaintiff simply concludes he suffered a sufficient harm in the form of an alleged "lost time value of money."  He offers no concrete allegations capable of supporting that he actually did suffer such a harm.   Plaintiff has thus failed to articulate how being fully paid on a biweekly basis affected him "in a personal and individual way."  *See Spokeo*, 578 U.S. at 339. Plaintiff has not demonstrated standing and the Complaint should be dismissed.

**B.     Plaintiff Fails To State A Claim For Relief Because §191 Does Not Provide A Private Right Of Action**

The Court should alternatively dismiss the Complaint for failure to state a claim on the grounds that §191 does not provide Plaintiff with a private right of action.  Levi's respectfully submits that *Vega v. CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019) was incorrectly decided, for the reasons set forth below, and that the Court should depart from its reasoning.

**1.     The Court Is Not Bound To Follow *Vega***

Certain federal courts have deferred to the First Department's brief, seven-paragraph decision in *Vega* without any independent analysis of the statute itself.  *See, e.g.*, *Carrera v. DT Hosp. Grp.*, No. 19-CV-4235 (RAK), 2021 WL 6298656, at *10 (S.D.N.Y. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021); *Sorto v. Diversified*

*Maint. Sys., LLC*, No. 20-CV-1302 (JS) (SIL), 2020 WL 7693108, at *2 (E.D.N.Y. Dec. 28, 2020). However, as discussed in greater detail below, *Vega* was incorrectly decided and recent caselaw indicates that the New York Court of Appeals would not approve of *Vega*. As such, this Court is not bound to follow *Vega* and should join certain other courts that have so declined. *See Zivkovic v. Laura Christy, LLC*, No. 17-CV-553-GHW, 2022 U.S. Dist. LEXIS 94839, *13 (S.D.N.Y. May 26, 2022) (rejecting First Department decision relating to application of the NYLL finding the court did not properly consider the relevant text of the statute and that the Court of Appeals would likely reject it); *Accosta v. Lorelei Events Grp.*, No. 17-cv-7804, 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (noting that while the FLSA provides a cause of action for late paid wages, "the NYLL does not appear to provide a similar remedy"); *Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 WL 6777500, at *3 (Sup. Ct. Apr. 20, 2021) (dismissing NYLL §191 claim for late-but-full wage payments because "NYLL §191(1)(a) does not provide for private recovery for violations of its provisions regarding frequency of payment and recordkeeping or for liquidated damages for wages that were previously paid though untimely").

### 2. The Court Should Decline To Follow *Vega* Because it Rests On An Unsound Statutory Interpretation That Produces An Absurd Result

Prior to *Vega*, New York state and federal courts generally agreed that there was no private right of action under §191 for the late payment of wages. *See* NYLL §198(1-a) ("In any action instituted in the courts upon a wage claim by an employee … in which the employee prevails, the court shall allow such employee to recover the full amount of any *underpayment* ….") (emphasis added); *accord Hussain v. Pak. Int'l Airlines Corp.*, No. 11-CV-932 (ERK) (VVP), 2012 WL 5289541, at *3, 8 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment"); *Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S. 3d 866, 869 (Sup. Ct. Dec. 12, 2019) (the "actual payment of wages in full albeit on a

biweekly basis where the law requires payment on a weekly basis does not constitute an 'underpayment' that would trigger an employee's right to commence a lawsuit to recover the damages set forth in" NYLL §§191 and 198); *Gardner v. D&D Elec. Const. Co. Inc.*, No. 160249/2018, 2019 WL 3765345, at *2 (Sup. Ct. Aug. 09, 2019) (same); *Arciello v. Cty of Nassau*, No. 16-CV-3974 (ADS) (SIL), 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019).

In *Vega,* however, the First Department departed from this historical tradition and focused on a single term – "underpayment" – in §198(1-a), the provision of the NYLL setting forth damages entitlements for violations of other NYLL provisions. *See* 175 A.D.3d at 1145. Relying on a dictionary definition, the First Department held that an "underpayment" occurs "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a)." *Id.* This interpretation, however, is untenable when considered in the context of the remainder of §198(1-a), which uses the term "underpayment" to refer to the amount that is "found to be due" and the amount the employee is entitled "to recover" in a lawsuit:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, *the court shall allow such employee to recover the full amount of any underpayment*, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, *an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due.*

NYLL §198(1-a) (emphases added).  When an employee is paid their full wages on a biweekly schedule, there are no unpaid wages remaining for the employee to "recover" or that remain "due" – all have been paid.  The First Department's logic is therefore the product of faulty statutory construction.[8]

---

[8]     The First Department ignored this inconsistency and analogized §198(1-a) to §16(b) of the Fair Labor Standards Act ("FLSA").  However, this comparison disregards the significant differences between the NYLL and FLSA.  Most notably, the FLSA does not require that certain employees be paid on a weekly basis. *See* 29 C.F.R. §778.106 ("There is no requirement in the [FLSA] that overtime compensation be paid weekly.").  The NYLL and

Indeed, Plaintiff's Complaint does not contain any allegation of an underpayment of wages, illustrating the absurdity of *Vega's* reasoning. *See Hunter v. Planned Bldg. Servs., Inc.,* No. 715053/2017, 2018 WL 3392476, at **2 (Sup. Ct. June 20, 2018) (A "plaintiff has no private right of action under NYLL §198(1-a) for a frequency of payment violation of NYLL §191(1)(a)(i) where there is no claim for unpaid wages."). If Levi's had shorted Plaintiff's pay by $10.00 per pay period, but paid him on a weekly basis, he would have suffered a concrete injury of $10 per week, and under §191 would be entitled to recover $10 in back wages plus $10 in liquidated damages for each week. That is plainly the intent of the statute routinely recognized by courts prior to *Vega. See id.* However, here, Plaintiff was paid the full amount of the wages owed to him in accordance with a commonplace bi-weekly payment schedule, and yet is seeking a windfall recovery of 50% of his gross earnings. The difference in outcomes is absurd, and any statutory construction that produces an absurd outcome should be avoided. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("Under the canon of absurdity, it is 'well established that '[a] statute should be interpreted in a way that avoids absurd results.'"") (internal citation omitted).

### 3.     The Legislative History & Enforcement Scheme Of Sections 191 and 198(1-a) Support That No Private Right of Action Exists

*Vega's* holding is also inconsistent with the legislative histories of Sections 191 and 198(1-a). Each statutory provision evolved separately. §191 stems from an 1890 law that assessed a civil penalty for violations in actions brought by state "factory inspectors" rather than private

---

FLSA penalty provisions also have divergent purposes. In the FLSA context, prejudgment interest is not available where liquidated damages are awarded because liquidated damages are "compensation for damages arising from delay in the payment of the basic minimum wages," and prejudgment interest is thus unavailable where liquidated damages are awarded. *Id.* at 715. The New York State legislature takes a different view of liquidated damages and thus expressly authorizes the recovery of "prejudgment interest" in addition to liquidated damages. NYLL §198(1-a). Since both are recoverable, the purpose of liquidated damages under §198(1-a) cannot be to compensate an individual for the delay in payment as the prejudgment interest serves that purpose.

plaintiffs.  *See* 1890 N.Y. Laws p. 741. §198 has its origin in the 1937 Model Wage Bill, and did

not include the liquidated damages provision until 1967.  *See* 1937 N.Y. Laws p. 1157; 1967 N.Y.

Laws pp. 1014-15. The legislative history from 1967 confirms that the Legislature's primary

concern was with employers who "fail[ed] to pay wages" or "fail[ed] to pay the minimum wage."

Mem. of Indus. Comm'r, Bill Jacket, L. 1967, ch. 310 , 2 (N.Y.).  There is no indication that the

Legislature intended this provision to impose a penalty on employers that paid their employees'

wages in full, but did so on a biweekly rather than weekly pay cycle.  The First Department did

not consider this legislative history.

Similarly, *Vega's* holding is irreconcilable with the enforcement schemes for violations of

the NYLL.  Pursuant to NYLL §218, violations of Article 6 of the NYLL (which includes §191)

are enforceable as either wage claims, subject to private lawsuits and carrying the possibility of

liquidated damages under §198, and non-wage claims, subject to public enforcement only and

carrying statutory penalties of $1,000-$3,000 without liquidated damages.   The New York

Department of Labor ("NYDOL") has *consistently* prosecuted frequency of pay claims as non-

wage matters.  *See, e.g.*, *Ribble (d/b/a Perfecto Cleaners)*, PR NO. 06-038, 039 (Indus. Bd. of

Appeals, Dec. 19, 2007) (classifying a frequency of pay violation as a non-wage violation subject

to a penalty of $1,000 under NYLL §218, not a wage claim subject to 100% liquidated damages

penalty).  To be sure, if the NYDOL was prosecuting Plaintiff's claim before this Court, Levi's

would be faced, at worst, solely with a modest statutory penalty.[9]

---

[9]     Although somewhat superficial, the NYDOL maintains a "Labor Standards Complaint Form" for use by
employees seeking to expose potential NYLL violations.  The Complaint Form lists frequency-of-pay claims as a
"non-wage complaint," alongside claims for failure to "[p]rovide a day or rest" or "a termination notice," whereas
actual wage underpayment clams are dealt with in a different section of the Complaint Form. (Murphy Decl. Ex. C at
Part 8).

There is no indication that the First Department was presented with argument or evidence concerning either the legislative history or enforcement schemes for these NYLL provisions.  The *Vega* holding is therefore based on an incomplete record.  With the more robust record and analytical framework provided here, a different outcome should be reached.

    **4.**    ***Vega's* Creation Of A Private Right of Action Contravenes Recent Court Of Appeals Authority**

*Vega's* holding is also irreconcilable with the New York Court of Appeals' recent decision in *Konkur v. Utica Academy of Science Charter School*.  *See* 38 N.Y.3d 38 (2022).  In *Konkur*, the Court of Appeals considered whether NYLL §198-b, which concerns wage "kickbacks," contained a private right of action.  Although §198-b is distinct from §198(1-a), the Court of Appeals held that private rights of action cannot be implied under Article 6 of the NYLL because, "[w]here the Legislature intended for an Article 6 provision to be enforced individually, it expressly provided a private right of action."  *Id.* at 44.  The Court thus declined to find a private right of action under §198-b as the requisite expression of legislative intent was lacking.  The same principle should apply here.

The Court of Appeals has long made clear that courts should "decline[] to recognize a private right of action in instances where [t]he Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."  *Cruz v. TD Bank*, 22 N.Y.3d 61, 71 (2013) (internal quotation marks omitted).  In 2020, the Legislature amended §198 to explicitly create private rights of action for violations of NYLL §§195(1) and 195(3).  *See* 2010 N.Y. LAWS 564; NYLL §198(1-b) and (1-d).  §191 was not included.  The fact that the Legislature expressly decided to include a private right of action for a closely related statutory provision, but excluded §191 from such a change-in-law, strongly suggests a legislative intent to carve out §191 from enforcement via a private right of action.  *See Cruz*, 22 N.Y.3d at 71.

5.     **The Cannon of Constitutional Avoidance Supports Declining to Apply** *Vega*

As a final matter, *Vega's* holding is incompatible with constitutional considerations.  It is well established that courts should interpret statutes "to avoid constitutional problems if a viable alternative interpretation exists." *U.S. v. Awadeallah*, 349 F.3d 42, 55 (2d Cir. 2003).  Due Process precludes the imposition of statutory penalties in amounts that are "wholly disproportioned" to the harm claimed by a plaintiff.  *See St. Louis, I.M. & S. Ry. Co. v. Williams*, 241 U.S. 63, 66-67 (1919); *accord Missouri Pac. R. Co. v. Tucker*, 230 U.S. 340, 349, 351 (1913) (finding imposition of $500 statutory liquidated damages award was so "grossly out of proportion to the possible actual damages" of $3.02 in the case "that its enforcement would be nothing short of the taking of property without due process of law … in contravention of the 14th Amendment"); *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 486-87, 491 (1915) (same, with respect to statutory damage award of $6,300 where actual damages were less than $10).  The Eighth Amendment's Excessive Fines Clause likewise prohibits the imposition of statutory penalties bearing no reasonable "relationship to the gravity of the offense that [the statute] is designed to punish." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998).

The remedy sought by Plaintiff offends both constitutional notions equally.  These astronomical penalties would be incurred *even though all wages have been paid* and Plaintiff has, in fact, suffered no meaningful economic or other injury.  These penalties – which would inflate, on a dollar-for-dollar basis the more highly compensated a "manual worker" is – grossly exceed the limited injury that Plaintiff himself has attempted to plead: the lost "time value of money." Indeed, even a superficial analysis of plaintiff's theory of action will illustrate that such penalties have the ability to bankrupt businesses – large and small – operating in New York, all for the sake of plaintiffs and their class counsel obtaining an unearned and unconscionable *windfall*.

14

For each of these reasons, Levi's respectfully requests that the Court decline to follow *Vega* and dismiss the Complaint on the grounds that Plaintiff does not have a private right of action to pursue a frequency of pay claim.

**C.    Plaintiff Fails to State A Claim Because He Has Not Plausibly Alleged He Was Employed as a "Mechanic, Workingman or Laborer"**

Even assuming, for the sake of argument, that Plaintiff had standing and that a private right of action did exist to pursue a frequency of pay claim, the Complaint should be dismissed because §191 only requires weekly pay for "manual workers."  NYLL §191.  The NYLL defines a "manual worker" as a "mechanic, workingman or laborer." NYLL §§190(4); 191(1)(a).  Plaintiff, a retail store employee by his own admission, does not meet the definition.

Plaintiff devotes just a portion of a single paragraph in his Complaint to the contention he satisfies this statutory definition.  He states only that 25% or more of his job responsibilities, in an unidentified position at an unidentified retail location, included "tasks such as unpacking, stocking and organizing inventory, folding clothes, and tending to fitting rooms." (Comp. ¶11).  Plaintiff's perfunctory and mechanical allegations are insufficient to trigger coverage under §191 for two separate reasons.

First, Plaintiff's reference to spending 25% of more of his time engaged in physical labor is a legal conclusion.  *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("We are not required to credit conclusory allegations or legal conclusions couched as factual allegations").  The 25% figure derives from NYDOL guidelines and opinion letters concerning the meaning of the term "manual worker."  It is not a factual averment sufficient to withstand a motion to dismiss, but a mere conclusion transparently pled in an effort to meet these guidelines.

Second, the activities Plaintiff alleges to have participated in are not considered "physical labor" within the "manual worker" definition.  The New York Industrial Board of Appeals

("IBA"), which is responsible for reviewing appeals from orders issued by the NYDOL for violations of the NYLL, including NYLL §191, has explained that a laborer "may dig a ditch," be employed to move "boxes of material from a truck to a rack," or be a "construction worker" who is employed to move material from one area to another. *See Hudson Valley Mall Dental*, (Indus. Bd. of App. PR 12-034) (Aug. 7, 2014).  This interpretation suggests that strenuous physical exertion is a hallmark of "manual worker" status.  At the time of adoption of §191, and in the many decades pre-dating *Vega* since, there have been many opportunities to add to the above description the typical duties of a retail store employee; the fact that no such authority has done so is telling.

The activities of a retail worker at a Levi's retail location, as alleged by Plaintiff, lack the described characteristics of other work that has been identified as "manual labor."  For example, in *Plus Discount Foods*, the IBA held that employees engaged in routine retail work such as "operating the cash register," "stocking and rotating stock," "pricing and repricing merchandise," "setting up displays," "cutting and baling cartons," "handling returned and unpurchased items," and "collecting and return[ing] shopping carts from the parking lot" were not manual workers. *Plus Discount Foods* (Indus. Bd. of App. PR-12-80)  (June 3, 1981).  New York courts defer to the IBA's interpretation of a statute for which it is responsible for administering.  *See Netram v. New York State Indus. Bd. of Appeals*, 78 N.Y.S.3d 808, 810 (3d Dep't 2018) (internal citations omitted); *see also Matter of Howard v. Wyman*, 28 N.Y.2d 434, 438 (1971).

As such, Plaintiff has not adequately alleged that he is a "manual worker" under §191 and his Complaint should be dismissed for failure to state a claim.

II.     **IF THE COURT DOES NOT DISMISS THE COMPLAINT, THE COURT SHOULD STAY ALL PROCEEDINGS PENDING THE OUTCOME OF THE *MABE* AND *GRANT* APPEALS**

The legal questions presented by Levi's Motion in Points I.A and I.B, *supra*, are likely to be resolved by the Court of Appeals, the United States Court of Appeals for the Second Circuit,

and/or the Appellate Division, Second Department in *Mabe v. Wal-Mart Associates, Inc.*, No. 1:20-cv-00591 (N.D.N.Y.) and *Grant v. Global Aircraft Dispatch, Inc*., App. Div. No. 2021-03202 (2d Dep't).  Any further proceedings in this matter should be stayed pending the outcomes of these potentially dispositive appeals to preserve the resources of the Court and the Parties.

### A.      Applicable Standard

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.").  A court may stay proceedings in an action before it, "pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling" of the issues before the Court.  *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).  Courts routinely "exercise [their] staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs v. Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *see also Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (instructing the District Court to stay the proceedings pending a Supreme Court decision which was likely to determine the question of liability).

Courts in the Second Circuit consider the following factors in deciding whether to stay an action: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Van Elzen v. Glob. Strategy Grp., LLC*, No. 20-CV-3541 (JPO), 2021 WL 185328, at *2 (S.D.N.Y. Jan. 19, 2021) (*quoting Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

17

B.      **The Five *Kappel* Factors Heavily Weigh in Favor of a Stay**

The five factors set forth in *Kappel* all weigh in favor of a stay.  First, Plaintiff's interests will not be harmed by this limited stay. As described above, Plaintiff has not suffered actual monetary damages and instead merely seeks statutory penalties.  *See Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2017 WL 4876305, at *5 (S.D.N.Y. Oct. 27, 2017) (plaintiff was not prejudiced because future monetary damages were an adequate redress). There is no indication that plaintiff will be harmed by some additional delay.  Further, this case is in the earliest stages of litigation; a Rule 26 conference has not taken place, a case management schedule has not been entered, and discovery has not commenced.  *See Aerotel, Ltd. v. IDT Corp.*, No. 03-CIV-6496 (RJH) (FM), 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (finding stay "not unduly prejudicial" to plaintiff where "litigation ha[d] just begun"); *Pierre v. Prospect Mortg.*, LLC, No. 13-CV-453 NAM/RFT, 2013 WL 5876151, at *4 (N.D.N.Y. Oct. 31, 2013) (same).  Plaintiff has not yet expended significant time and energy prosecuting this case.  Plaintiff, moreover, will be benefited from a stay in the not-unlikely event that the dispositions of either *Mabe* or *Grant* vitiate his claims, as he will be saved from the effort to prosecute a claim upon which he ultimately cannot prevail.  Indeed, Counsel to Plaintiff has sought permission to file an *amicus* brief in *Grant*, and acknowledged that the "issues presented in this appeal are of significant importance to the proposed *amici*."  Murphy Decl. Ex. B at ¶10.

Second, Levi's will be prejudiced in the absence of a stay.  Levi's will be forced to expend time and financial resources defending a putative class action, which may very well – and should – be nullified.  Plaintiff will inevitably seek discovery, which will require Levi's to reveal its business and proprietary information, and to the extent Plaintiff seeks information concerning putative plaintiffs, the private information of third-parties.

18

Third, fourth, and fifth, awaiting the outcomes of the pending appeals serves the interest of this Court, the public interest, and persons who are not party to this action. To be sure, where "an appellate court decision would be dispositive of the litigation, New York courts have found the [five] factors to weigh in favor of staying proceedings." *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 290 (E.D.N.Y. 2014); *see also In re Literary Works in Elec. Databases Copyright Litig.*, No. 00 CIV 6049, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (granting motion to stay because although "[a] decision in the [case] before the United States Supreme Court 'may not settle every question of fact and law' before this Court," "in all likelihood it will settle many and simplify them all").

Here, the appeals in *Mabe* and *Grant* are likely to have a significant, potentially dispositive impact on the claims in this case. The appeal in *Mabe* asks the Second Circuit or New York Court of Appeals to dispositively identify whether there is a private right of action for untimely, but fully paid wages under the NYLL. In *Grant*, the Second Department will offer an opinion of equal weight to that of *Vega*, which may well influence the legal reasoning to be applied here. As some federal court decisions have mechanically relied upon *Vega* as the highest state authority on §191, a contrary decision in *Mabe* or *Grant* may well free courts to appropriately and expeditiously clear their dockets of numerous unwieldy and untenable class actions.

Perhaps most notably, the public has an interest in the continued vitality of the retail industry in New York State. As set forth in Section B of the "Relevant Allegations" heading above, the retail industry was responsible for generating payroll of $36.85 billion in 2021. The retail employers responsible for this economic activity are faced with potentially ruinous financial liability if federal courts continue to follow *Vega*. Awaiting resolution of these appeals, in a circumstance where it has no material consequence to Plaintiff, without further harming a retailer

like Levi's and otherwise contributing to an untenable litigation landscape, thus serves the public interest.

Accordingly, the Court should stay this proceeding pending resolution of the appeals in *Mabe* and *Grant* in order to protect the interests of all parties to the suit, the Court, and the public. *See McNamee v. Clemens*, No. 09 CV 1647 SJ CLP, 2014 WL 1682025, at *3 (E.D.N.Y. Apr. 28, 2014) ("[t]he public, too, suffers when litigation proceeds in" a "repetitive" and "costly" "fashion") (*citing Martin v. Dist. of Columbia Court of Appeals*, 506 U.S. 1, 3 n.3 (1992)).

## III. ALTERNATIVELY, THE COURT SHOULD STRIKE ALL CLASS ALLEGATIONS BECAUSE THE PUTATIVE CLASS IS AN IMPERMISSIBLE "FAIL-SAFE" CLASS

Even putting aside the grounds supporting dismissal of the Complaint on jurisdictional and substantive grounds, the Court should alternatively strike all class allegations on the grounds that they constitute an impermissible "fail-safe" class.

### A. Applicable Legal Standard

Federal Rule of Civil Procedure 23(d)(1)(D) empowers District Courts to determine whether a case may be maintained as a class action, and to "require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly" at an early stage. FED. R. CIV. P. 23(d)(1)(D); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015). A decision on class certification should be issued "[a]t an early practicable time." FED. R. CIV. P. 23(c)(1)(A). Courts may resolve claims at the pleading stage if it is "plain enough from the pleadings" that the proposed class cannot be certified. *See, e.g., Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-117 (E.D.N.Y. 2010); *Borgese v. Baby Brezza Enter.* LLC, 2021 WL 634722, at *1 (S.D.N.Y. Feb. 18, 2021) (granting Rule 23(d)(1)(D) motion at the pleading stage); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (noting that it is appropriate to strike class allegations where the motion is

premised on "issues separate and apart from issues that will be decided on a class certification motion"); *Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (citing 5-23 *Moore's Fed. Practice* 3d § 23.82); *see also Gen Tel. Co. of Southwest. v. Falcon,* 457 U.S. 147, 160 (1982).

### B.   A Class Comprised of All "Manual Workers" Is An Impermissible Fail-Safe Class

A "fail-safe" class is one defined in a way that "shields the putative class members from receiving an adverse judgment."  *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (quoting *Randleman v. Fidelity Nat'l title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).  "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Id.*  A "proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Id.* (*citing Randleman, supra;* and *Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010)).

Here, Plaintiff defines the proposed class as:

"[A]ll persons who worked as manual workers in their employment for Defendant in the State of New York from six years preceding this Complaint to the date of class notice in this action"

(Comp. ¶12).  This is an impermissible fail-safe class because it includes as members only those employees who meet the definition of "manual workers."  This definition "begs the very legal question at issue in [the] case and is unworkable because the class definition depends upon a legal determination that has not yet been made." *Gregory v. Stewart's Shops Corp.*, No. 14-CV-33 (TJM/ATB), 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2016), *report and recommendation adopted sub nom. Gregory v. Stewart's Shops Corp.*, No. 14-CV-00033, 2016 WL 5409326

(N.D.N.Y. Sept. 28, 2016) (quotations omitted).  The Court would have to decide the merits of individual class members' claims to determine class membership; *i.e.*, did each putative class member spend 25% or more of their working time engaging in physical labor.  *See Nypl v. JP Morgan Chase & Co.*, No. 15-CIV-9300 (LGS), 2022 WL 819771, *9 (S.D.N.Y. Mar. 18, 2022).

If an individual does not meet the statutory definition of a "manual worker," the putative plaintiff is "not in the class, and therefore not bound by the judgment." *See Mazzei*, 288 F.R.D. at 55.  On the flip side, and assuming there exists a private right of action, anyone meeting the class definition would automatically be able to participate in a favorable judgment.  Accordingly, the proposed class allegations should be dismissed and/or stricken.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Levi's respectfully request that the Court enter an order: (i) dismissing the Complaint in its entirety or alternatively staying all proceedings pending the outcomes of the appeals in *Mabe* and *Grant*; (ii) striking all class allegations; and (iii) for such other and further relief as this Court deems just and proper.

Dated:  July 8, 2022

Respectfully Submitted,


By       */s/ Brian D. Murphy*
      Brian D. Murphy
      Lindsay Stone
      SHEPPARD MULLIN RICHTER & HAMPTON LLP
      30 Rockefeller Plaza, 39th Floor
      New York, New York  10112
      Telephone:    212.653.8700
      Facsimile:    212.653.8701
      *Attorneys for Defendant*
      *Levi's Only Stores, Inc.*