**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK RANKINE, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>LEVI STRAUSS & CO.,<br><br>               Defendant. | Civil Action No. 1:22-cv-03362-VSB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.       PLAINTIFF HAS ARTICLE III STANDING ...................................................... 1

     A.      Plaintiff Is Not Required to Allege Specific Investments He Would
         Have Made If He Were Hypothetically Paid On Time ......................................... 1

     B.      The *Maddox* And *TransUnion* Decisions Support A Finding Of
         Concrete Injury .................................................................................................... 5

          1.      The Late Payment of Wages Is Unlike The Hypothetical
              Harms At Issue In *Transunion* And *Maddox* .................................. 5

          2.      The New York Legislature's Intent Is "Instructive" .................................. 6

II.      THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS
      ACTION .............................................................................................................. 7

     A.      13 Out Of 13 Courts To Consider *Vega* Have Held That An
         Employee Has A Private Right Of Action For Late Wage
         Payments; Zero Have Disagreed ........................................................................... 8

     B.      Courts Have Held That A Private Right Of Action Exists Long
         Before *Vega* ...................................................................................................... 10

     C.      Failure To Make Timely Payment Of Wages Has Dire
         Consequences For The Low-Income Workers NYLL § 191 Was
         Designed To Protect ............................................................................................ 12

III.     THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR
      VIOLATIONS OF NYLL § 191 ......................................................................... 13

     A.      Legislative Memoranda From 1966 And 1967 Show An Intent To
         Create A Private Right Of Action With Liquidated Damages From
         Late Payment Of Wages ..................................................................................... 14

     B.      Wages Become "Unpaid" If They Are Not Paid When Due ............................... 16

     C.      The New York Department Of Labor Has Explicitly Held That A
         Private Right Of Action Exists ........................................................................... 17

IV.      NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF
      ACTION ............................................................................................................. 19

V.       THE CANNON OF CONSTITUTIONAL AVOIDANCE IS
      INAPPLICABLE HERE ...................................................................................... 20

VI.      PLAINTIFF IS A MANUAL WORKER ............................................................ 22

VII.     DEFENDANT'S REQUEST FOR A STAY SHOULD BE DENIED ................... 23

i

A.    The *Mabe v. Wal-Mart* and *Grant v. Global Aircraft* Appeals Are
      Without Merit....................................................................................... 23

B.    The Relevant Factors Weigh Against A Stay ....................................... 25

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Accosta v. Lorelei Events Grp.*,
2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) ............................................................... 8

*Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*,
16 N.Y.S.3d 898 (N.Y. Sup. Ct. N.Y. Cty. 2015) ............................................. 10, 24

*Beh v. Cmty. Care Companions Inc.*,
2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ...................................................... 9, 22

*Belizaire v. Rav Investigative & Sec. Servs.*,
61 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................... 11

*Biggs v. Wilson*,
1 F.3d 1537 (9th Cir. 1993) ............................................................................... 16

*Castanares v. Deutsche Lufthansa AG*,
2021 WL 811455 (C.D. Cal. Jan. 26, 2021) .......................................................... 5

*Caul v. Petco Animal Supplies, Inc.*,
2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021) ............................................. 3, 8, 9, 19

*Caul v. Petco Animal Supplies, Inc.*,
2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) .......................................... 21, 23, 24

*Cuzco v. Orion Builders, Inc.*,
2010 WL 2143662 (S.D.N.Y. May 26, 2010) ....................................................... 10

*Dep't of Hous. & Urban Dev. v. Rucker*,
535 U.S. 125 (2002) ........................................................................................ 21

*Duverny v. Hercules Medical P.C.*,
2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ......................................................... 9

*Elhassa v. Hallmark Aviation Servs., L.P.*,
2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) ............................................. 9, 18, 19

*Ensminger v. Credit Law Ctr., LLC*,
2019 WL 4341215 (D. Kan. Sep. 12, 2019) ........................................................ 4

*Farina v. Metro. Transp. Auth.*,
409 F. Supp. 3d 173 (S.D.N.Y. 2019) ............................................................... 21

*Gaughan v. Rubenstein*,
   261 F. Supp. 3d 390 (S.D.N.Y. 2017) ............................................................ 10

*Gillett v. Zara USA, Inc.*,
   2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022)................................................ 2, 8

*Gonzales v. Gan Israel Pre-School*,
   2014 WL 1011070 (E.D.N.Y. March 14, 2014).............................................. 22

*Grant v. Global Aircraft*,
   2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021) ............ 10

*Grant v. Glocal Aircraft Dispatch*,
   2021 WL 6777500 (Sup. Ct. Apr. 20, 2021) .............................................. 8, 16

*GTFM, Inc. v. Park*,
   2002 WL 31890940 (S.D.N.Y. Dec. 30, 2002) ........................................... 24, 25

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
   607 F.3d 453 (7th Cir. 2010) ................................................................. 3

*Harris v. U.S.*,
   536 U.S. 545 (2002) ......................................................................... 21

*Imbarrato v. Banta Mgmt. Servs., Inc.*,
   2020 WL 1330744 (S.D.N.Y. Mar. 20, 2020) ............................................... 4

*In re Health Mgmt., Inc.*,
   1999 WL 33594132 (E.D.N.Y. Sept. 15, 1999) ............................................ 24

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019).................................................................. 6

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996) ......................................................... 24

*Konkur v. Utica Academy of Science Charter Sch.*,
   38 NY3d 38 (2022)............................................................................ 18

*Laumann v. Nat'l Hockey League*,
   2013 WL 837640 (S.D.N.Y. Mar. 6, 2013)................................................. 25

*Lopez-Serrano v. Rockmore*,
   132 F. Supp. 3d 390 (E.D.N.Y. 2015) ...................................................... 11

*Mabe v. Wal-Mart Assocs., Inc.*,
   2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ...................................... 9, 18, 19, 23

*Maddox v. Bank of New York Mellon Trust Co.*,
19 F.4th 58 (2d Cir. 2021) ................................................................................ 5, 6

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
72 N.Y.2d 166 (1988) ....................................................................................... 17

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ............................................................................ 11

*P & L Group v Garfinkel*,
150 AD2d 663 (2d Dep't 1989) ......................................................................... 6

*Parker v. Time Warner Entm't Co.*,
331 F.3d 13 (2nd Cir. 2003) ............................................................................ 20

*Pashaian v. Eccelston Properties, Ltd.*,
1993 WL 322835 (S.D.N.Y. Aug. 16, 1993) .................................................... 11

*People v. Vetri*,
309 NY 401 (1955) ..................................................................................... 6, 12

*Phillips v. Max Finkelstein, Inc.*,
73 Misc. 3d 1 (N.Y. App. Term. 2021) .............................................................. 9

*Pontes v. Rowan Univ.*,
2021 WL 4145119, n.5 (3d Cir. Sept. 13, 2021) ............................................... 6

*Poplawski v. Metroplex on the Atl., L.L.C.*,
2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ................................................ 11, 12

*Porsch v. LLR, Inc.*,
380 F. Supp. 3d 418 (S.D.N.Y. 2019) ............................................................. 2, 3

*Rodrigue v. Lowe's Home Centers, LLC*,
2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ............................................... 8, 20

*Rojas v. Hi-tech Metals, Inc.*,
2019 WL 4570161 (Queens Cnty. Sept. 11, 2019) ............................................. 8

*Scott v. Whole Foods Market Group, Inc.*,
2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ...................................................... 8

*Sorto v. Diversified Maintenance Systems, LLC*,
2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) .................................................... 9

*Sorto v. Diversified Maint. Sys., LLC*,
2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020) .................................................. 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ............................................................................. 3, 6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................. 5, 6

*U.S. v. Awadellah*,
    349 F.3d 42 (2d Cir. 2003) .............................................................................. 21

*Urtubia v. B.A. Victory Corp.*,
    857 F. Supp. 2d 476 (S.D.N.Y. 2012) .............................................................. 10, 22

*V.S. v. Muhammad*,
    595 F.3d 426 (2d Cir. 2010) ............................................................................. 1, 7

*Van v. LLR, Inc.*,
    962 F.3d 1160 (9th Cir. 2020) ............................................................................. 4

*Vega v. CM & Assoc. Const. Mgmt., LLC*,
    175 A.D.3d 1144 (N.Y. App. Div. 1st Dep't 2019) ........................................... passim

*Wiggins v. Hain Pure Protein Corp.*,
    829 F. Supp. 2d 231 (S.D.N.Y. 2011) ................................................................ 10

*Zivkovic v. Laura Christy LLC*,
    2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022) ...................................... 8

*Zomba Recording LLC v. Chen*,
    2009 WL 1011644 (N.D.N.Y. Apr. 15, 2009) ...................................................... 24

## STATUTES

New York Labor Law ("NYLL") § 191 ........................................................ 11, 12, 13

New York Labor Law ("NYLL") § 191 (1)(a) ...................................................... 10

New York Labor Law ("NYLL") § 198 ........................................................ 13, 14

New York Labor Law ("NYLL") § 198 (1-a) ...................................................... 13

## OTHER AUTHORITIES

Spokeo: The Quasi-Hohfeldian Plaintiff and the Nonfederal Federal Question,
    25 Geo. Mason L. Rev. 583 (2018) ........................................................................ 3

**INTRODUCTION**

In *Vega v. CM & Assoc. Const. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019), New York's appellate division for the First Department issued a unanimous decision which held that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Vega* is the State's highest court to address this issue to date. Since the issuance of the *Vega* decision, all 13 courts to consider it (including 11 federal courts in this Circuit) have followed its holding. Zero have declined to do so.

The Second Circuit has explained that federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). Defendant comes nowhere close to clearing this significant hurdle.

Defendant also argues that Plaintiff lacks standing. But several courts in this Circuit have similarly held that violations of NYLL § 191 give rise to Article III standing. The time value of money is real. A dollar today is not the same as a dollar tomorrow.

The numbers do not lie. There is a reason why the arguments Defendant is making keep being rejected. It is because they are wrong.

**ARGUMENT**

**I.    PLAINTIFF HAS ARTICLE III STANDING**

    **A.    Plaintiff Is Not Required to Allege Specific Investments He Would Have Made If He Were Hypothetically Paid On Time**

Defendant argues Plaintiff's allegations are "insufficient to meet Article III's threshold requirement" because he "has offered no allegations concerning his financial strategies or investment practices" or what "he would have done" if he were paid on time. MTD at 6-7. But these hyper-specific allegations are not required to allege Article III standing. Defendant's exact

argument has been rejected multiple times by courts in this Circuit in the NYLL § 191 context.

Indeed, just last month, Judge Failla rejected Defendant's argument in a nearly identical case asserting a violation of NYLL § 191.  *See*, *e.g.*, *Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *5 (S.D.N.Y. Aug. 10, 2022).  Judge Failla explained as follows:

> Irrespective of the fact that Plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III. This is because the "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." … This temporary withholding of money to which Plaintiff was owed — an injury Plaintiff purportedly suffered every pay period he worked for Defendants — is a concrete, economic harm. Framed differently, each time Plaintiff received late compensation for the work he performed, Defendants underpaid him for the work he performed.

*Id.* at *6 (internal citations omitted) (citing *Vega*, 107 N.Y.S.3d at 288); *see also Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("It is a basic princip[le] of economics and accounting that 'a dollar today is worth more than a dollar tomorrow.").

Judge Failla further clarified that "[e]ven without any additional facts about how [plaintiff] would have used his wages if he had received them in a timely fashion, Plaintiff has alleged a concrete harm resulting from Defendants' alleged violation of Section 191."  *Zara*, 2022 WL 3285275, at *6; *see also id.* at *7 ("This Court does not read *TransUnion* or any other binding precedent to require a plaintiff to specify how he intended to take advantage of the time value of his wages if they had not been improperly withheld for a period of time.").

Judge Failla's reasoning is in line with another partial denial of a motion to dismiss issued less than a month ago another similar NYLL § 191 class action captioned *Rodriguez v. Williams-Sonoma, Inc.*, Case No. 22-cv-02436-GRB-JMW (E.D.N.Y.).  There, Judge Brown rejected the defendant's argument that plaintiff lacked Article III standing for want of a concrete injury,

holding that the time value of money lost due to defendant's delayed wage payments was sufficient to confer standing.  *See* Kopel. Decl., Ex. 1, at pp. 22 of 28 ("[I]n this instance, I believe that the allegations are sufficient. … I do believe there's sufficient inference here that the [] plaintiff had some actual concrete loss if in fact the claim proves to be the case.  That is he was entitled to weekly pay and he got biweekly pay.  There is based on time value of money some inferential basis to believe that there was some loss.").

Defendant's argument was also rejected in the NYLL § 191 context by Judge Matsumoto in *Davis v. Banana Republic, LLC*, Case No. 21-cv-06160-KAM (E.D.N.Y. Apr. 5, 2022), where she held "I don't think [Article III standing] is a basis on which the defendant would be successful in moving to dismiss.  I just think the case law is really trending the other way and I would look to the many cases where the Courts have found an injury based on a violation of the New York Labor Law Section 191, especially if a laborer is deprived, even for a week or two, of the earned wages."  Kopel Decl., Ex. 7, at pp. 4.  And just a few months prior, Judge Seibel expressed the same sentiments while denying the motion to dismiss in *Corporan v. Regeneron Pharmaceuticals, Inc.*, Case No. 21-cv-05069-CS (S.D.N.Y. Jan. 24, 2022), Kopel Decl., Ex. 8, at pp. 9-10 ("[W]here an employee loses the use of his money, it affects his ability to pay bills, buy food, medicine or gasoline, participate in savings and investment opportunities, and that's true whether or not the wages are never paid, partially paid, or as here, paid late. … I, therefore, find that plaintiff here alleges a concrete harm sufficient for Article III standing.").

Defendant's argument was also rejected by Judge Kovner of the Eastern District in *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021).  There, the defendant argued "that an employee who has been paid all her wages but paid late would lack standing under Article III because she could only 'allege a bare procedural violation, divorced from any concrete

harm.'" *Id.* at *4 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  But Judge Kovner

rejected this argument:

> And in any event, the late payment of wages is a concrete harm.
> "[T]emporary deprivation of money to which a plaintiff has a right
> constitutes a sufficient injury in fact to establish Article III
> standing." *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y.
> 2019); *cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457
> (7th Cir. 2010) ("Every day that a sum of money is wrongfully
> withheld, its rightful owner loses the time value of the money.").
> That injury is especially acute for those workers "who are generally
> dependent upon their wages for sustenance," *Vega*, 175 A.D.3d at
> 1146.

*Id.* (internal citations omitted).  This Court has subject matter jurisdiction for these same reasons

articulated in *Zara*, *Rodriguez*, *Corporan*, *Davis*, *Caul*, and *Porsch*.  *See also Imbarrato v. Banta*

*Mgmt. Servs., Inc.*, 2020 WL 1330744, at *7 (S.D.N.Y. Mar. 20, 2020) (denying defendants'

*Spokeo* argument to dismiss NYLL claims where the legislature had "conferred the procedural

right in order to protect an individual's concrete interests").

Lastly, the Ninth Circuit has aptly explained that a plaintiff need not "allege specific plans

to invest its money into an interest-bearing asset to establish standing based on a temporary

deprivation of money." *Van v. LLR, Inc.*, 962 F.3d 1160, 1165 (9th Cir. 2020).  The Ninth Circuit

reasoned as follows:

> This argument misstates Van's claimed injury.  Van does not assert
> that she is injured because she lost interest income.  She asserts that
> she is injured because she lost the use of her money.  Consistent with
> our opinion here, although the former injury may be speculative, the
> latter injury is actual, concrete, and particularized.  Interest is simply
> a way of measuring and remedying Van's injury, not the injury
> itself.

*Id.* at 1164-65.

The Ninth Circuit's holding exposes the flaw in Defendant's position.  Plaintiff was injured

because she could not use or invest her delayed funds, as the Complaint alleges.  That is "actual,

concrete, and particularized." *Id.* But in arguing that Plaintiff is required to allege what specific investments he *would have* put the money into *if he had been paid in a timely fashion*, Defendant is asking Plaintiff to engage in the very sort of speculative and hypothetical exercise that cannot form the basis for standing. That makes no sense. Other courts have not required allegations regarding alternative uses for monies wrongfully withheld beyond alleging that plaintiffs were deprived from using their money and lost its time value. *See Ensminger v. Credit Law Ctr., LLC*, 2019 WL 4341215, at *4 (D. Kan. Sep. 12, 2019) (finding the "plaintiff suffered a concrete financial injury if he was deprived the use of his money" where "plaintiff has specifically alleged … that he suffered an injury in the form of the lost time value of money"); *Castanares v. Deutsche Lufthansa AG*, 2021 WL 811455, at *3 (C.D. Cal. Jan. 26, 2021) ("Plaintiffs allege that Lufthansa breached the Conditions of Carriage by failing to refund their purchase within a reasonable period of time and that this breach resulted in Plaintiffs' loss of the time value and use of their money. … These facts alleging economic harm suffice to demonstrate that Plaintiffs suffered a 'concrete,' 'real and not abstract' injury").[1]

## B.   The *Maddox* And *TransUnion* Decisions Support A Finding Of Concrete Injury

### 1.   The Late Payment of Wages Is Unlike The Hypothetical Harms At Issue In *Transunion* And *Maddox*

The harm Plaintiff alleges here—the loss use of money—stands in stark contrast to the hypothetical harms confronted in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58 (2d Cir. 2021). In *TransUnion*, the plaintiffs' "credit files, which were maintained by TransUnion, contained misleading OFAC alerts." *Id.* at

---

[1] Defendant incorrectly claims that Plaintiff's allegations here are deficient "notwithstanding his having been put on notice of *Rosario*." MTD at 8, n.8. But the allegations are different here than they were in *Rosario*. Namely, Plaintiff alleges injury in the form of loss of time value of money, and the loss of the opportunity to invest, earn interest on, or otherwise use monies that were rightfully his. FAC ¶ 11. None of these allegations were made prior to the *Rosario* decision, and the *Rosario* complaint has since been amended. *Id.* at

2209.  However, the plaintiffs could not demonstrate that "the inaccurate OFAC alerts in [plaintiffs'] TransUnion credit files were ever provided to third parties or caused a denial of credit" or "that the 6,332 class members even knew that there were OFAC alerts in their internal TransUnion credit files." *Id*. at 2211-12.  Thus, it was merely a risk of future harm that never materialized, which was not sufficiently concrete. *Id.*  Similarly, in *Maddox*, the plaintiffs alleged the defendant violated New York's mortgage-satisfaction-recording statutes by failing to record their satisfaction of a mortgage loan until nearly one year after it was fully paid. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 60 (2d Cir. 2021).  Although "the Maddoxes contend[ed] the Bank's delay adversely affected their credit during that time, making it difficult to obtain financing had they needed it in an emergency or for a new home … it is not alleged that this purported risk materialized," and thus could not give rise to Article III standing. *Id.* at 65.

Here, it cannot be disputed that Plaintiff lost the time value of the money owed to him. *See* FAC ¶ 11.  It was not hypothetical, it *did* materialize, and it constitutes concrete harm sufficient to confer standing. *See Pontes v. Rowan Univ.*, 2021 WL 4145119, at *4, n.5 (3d Cir. Sept. 13, 2021) ("In fact, several sister circuits have held that temporary loss of use of money is itself a sufficiently concrete injury to establish standing.") (emphasis added); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) ("The delay in those Plaintiffs' receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury.").

### 2.    The New York Legislature's Intent Is "Instructive"

In *TransUnion*, the Supreme Court explained, "[i]n determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be 'instructive.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citing *Spokeo*, 578 U.S. at 341).  To that end, it is important to examine the legislative intent behind NYLL §§ 191, "which is to protect workers who are generally 'dependent upon their wages for sustenance'

… and section 198, which was enacted to deter abuses and violations of the labor laws[.]" *Vega*, 175 A.D.3d at 1146 (citing *People v. Vetri*, 309 NY 401, 405 (1955) and *P & L Group v Garfinkel*, 150 AD2d 663, 664 (2d Dep't 1989) (section 198 "reflect(s) a strong legislative policy aimed at protecting an employee's right to wages earned")).

Against this backdrop, it is clear the Legislature enacted NYLL § 191 to make sure the poorest among us would have access to wages in a timely manner, thereby demonstrating its intent to address a harm it deems concrete. This was not some lofty and abstract policy goal, it was specifically enacted so that financially disadvantaged persons would have timely access to their pay, in particular because they are less likely to have financial reserves to carry them until their next paycheck. This evinces an understanding on the part of the New York Legislature that manual workers are concretely injured when they receive payment in an untimely fashion. There is no need to specify which groceries, rent payments, car bills, or investments Plaintiff hypothetically would have put the money towards if he was paid in a timely fashion.

## II.   THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS ACTION

The First Department has explained that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Vega*, 175 A.D.3d at 1146. And "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, in *Vega*, the First Department found two alternative bases for its decision that a private right of action exists for NYLL § 191 claims.

The *Vega* decision constitutes guidance from the highest state court to address this issue to date. Accordingly, because there is no case law from the Court of Appeals on this issue, this Court

is bound by the holding of the New York's First Department in *Vega* unless there is "persuasive evidence" that the Court of Appeals would hold otherwise.  *See V.S. v. Muhammad*, 595 F.3d at 432.  But no such "persuasive evidence" exists.  The *Vega* decision was unanimously issued by all five judges sitting on the First Department's panel without any dissent.  *See Zara*, 2022 WL 3285275, at *11 ("Because Defendants offer no 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in *Vega*, the Court is 'bound to apply the law as interpreted by' the intermediate appellate court.") (internal citations omitted); *see also Corporan*, Kopel Decl., Ex. 7 ("Defendant offers no 'persuasive evidence that the state's highest court would reach a different conclusion.'  So I am bound to apply the law as interpreted by the First Department in *Vega*.").[2]

### A.    13 Out Of 13 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed

Since *Vega*, at least 13 courts have adopted its holding, and zero courts to consider *Vega* have disagreed with its ruling.  Defendant offers no basis why this Court should be the first.

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise."  *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021); *see also Zara*, 2022 WL 3285275, at *12 ("Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of wages."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *2 (E.D.N.Y. Sep. 27, 2021) ("Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have

---

[2] Defendant's characterization of *Zivkovic v. Laura Christy LLC*, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022), *Accosta v. Lorelei Events Grp.*, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022), and *Grant v. Glocal Aircraft Dispatch*, 2021 WL 6777500 (Sup. Ct. Apr. 20, 2021) as courts that have "declined" to "follow *Vega*" is disingenuous. MTD at 9.  Neither of those cases discussed *Vega* whatsoever, and it appears the courts were unaware of *Vega*.

subsequently been paid."); *Quintanilla v. Kabco Pharm., Inc., et al.*, Case No. 2:19-cv-06752-PKC, ECF No. 18 (E.D.N.Y.) (June 30, 2020 Minute Entry) (rejecting argument that plaintiff did not have private right of action to pursue Section 191 claim "in light of the *Vega* decision"); *Corporan*, Kopel Decl., Ex. 7 at pp. 14-15 ("Since *Vega* was decided in 2019, every court in this Circuit to consider the decision appears to have followed it. … Defendant presents no compelling reasons for me to buck this trend… I find that decision, and the logic of other courts within this Circuit applying it, to be well-reasoned and persuasive."); *Davis*, Kopel Decl., Ex. 8 at pp. 4 (agreeing with *Vega* and rejecting argument that plaintiff lacks private right of action); *Rojas v. Hi-tech Metals, Inc.*, 2019 WL 4570161, at *4 (Queens Cnty. Sept. 11, 2019) ("In light of the sentiments set forth in *Gottlieb* by the Court of Appeals and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198 (1-a) claims is denied."); *Scott v. Whole Foods Market Group, Inc.*, 2019 WL 1559424, at *4 (E.D.N.Y. Apr. 9, 2019) ("The discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme."); *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022) ("[T]he Court is not convinced that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action."); *Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020) (following *Vega*, and denying defendant's motion for summary judgment as to plaintiff's Section 191 claim, noting that "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action"); *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108, at *3 (E.D.N.Y. Dec. 28, 2020) ("Accordingly, the Defendant's

objections are OVERRULED … permitting a private right of action is appropriate.") (internal quotation omitted); *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (agreeing with *Vega* "that a private right of action exists to enforce the rights established under section 198"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due, *see Vega []*, and as Judge Kovner concluded just months ago, [s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *Caul*, 2021 WL 4407856, at *3."); *Beh v. Cmty. Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (citing *Sorto* and *Duverny*, and holding [f]or these reasons, the Court concludes that there is a private right of action for violations of NYLL § 191.").

As noted in Defendant's brief, there was a New York Supreme Court that issued a decision holding that no private right of action exists. *See Grant v. Global Aircraft*, 2021 N.Y. Misc. Lexis 11125 (N.Y. Sup. Ct., Queens Cty. Apr. 20, 2021). But it is important to note that the *Grant* court did not consider *Vega*. This is apparent not only from the fact that the decision did not cite to or address it, but because the *Vega* decision was legally binding on that court. *Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*, 16 N.Y.S.3d 898, 916 (N.Y. Sup. Ct. N.Y. Cty. 2015) ("State trial courts must follow a higher court's existing precedent even though they may disagree."). The decision is now on appeal.

### B.   Courts Have Held That A Private Right Of Action Exists Long Before *Vega*

Defendant contends that "prior to *Vega*, New York state and federal courts generally agreed that there was no private right of action under § 191 for late payment of wages." MTD at 10. That

is wrong.  District courts within the Second Circuit have long held that a private right of action exists under NYLL § 191.  *See Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 241 (S.D.N.Y. 2011) ("[p]ursuant to § 191, certain kinds of employees can bring a claim for an employer's failure to pay their wages on a certain schedule."); *Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010) ("Defendants paid wages every two weeks (rather than weekly) and paid these wages no earlier than two weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs [] are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191."); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 481 (S.D.N.Y. 2012) (denying motion to dismiss claims for "violations of New York Labor Law section 191(1)(a), which requires that wages be paid weekly"); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 426 (S.D.N.Y. 2017) ("Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the … NYLL."); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 403-04 (E.D.N.Y. 2015) ( "[a]n employer's failure to timely pay its employees for their work" entitles the employees to a remedy under NYLL § 198."); *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010) (holding NYLL § 191 "guarantees the timely payment of wages by employers"); *Pashaian v. Eccelston Properties, Ltd.*, 1993 WL 322835, at *2 (S.D.N.Y. Aug. 16, 1993) (the purpose of NYLL § 191 and its damages provision (NYLL § 198) is to ensure "timely payment" of wages); *Ortiz v. Arthur T. Mott Real Estate, L.L.C.*, 2:15-cv-03940, ECF No. 73 (Order re: Motion to Dismiss) (E.D.N.Y. Sept. 15, 2016) (denying defendant's motion to dismiss plaintiffs' NYLL § 191 claim and stating that NYLL § 191 "guarantees the timely payment of wages by employers"); *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (allegation that bounced paychecks resulted in

delayed payment of wages was sufficient to set forth a cause of action for "late payments" under New York Labor Law § 191); *Poplawski v. Metroplex on the Atl., L.L.C.*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012) (granting class certification of NYLL § 191 claims where it was alleged that there was a "failure to pay wages in a timely manner").

Defendant's attempt to portray *Vega* as an anomaly that "departed from historical tradition," MTD at 10, is not based in reality.  The truth is that there was a split in authority on this issue, which *Vega* resolved.  Contrary to Defendant's hysterics, nothing crazy has resulted since *Vega* clarified this issue.  Defendant insists that "the proliferation of these cases is disastrous for New York businesses," MTD at 3, and that it will "bankrupt businesses – large and small – operating in New York," MTD at 15, yet Defendant fails to identify a single such "disaster," or bankruptcy in the years that have ensued since *Vega.*  The only legitimate result is that *Vega*'s guidance has now led to more widespread compliance with the law.

### C.    Failure To Make Timely Payment Of Wages Has Dire Consequences For The Low-Income Workers NYLL § 191 Was Designed To Protect

Defendant's briefing calls the provisions of NYLL § 191 "absurd," MTD at 11, and the penalties for violating it an "unconscionable windfall," MTD at 15, while whining about the impact its enforcement has on employers.  *Id*.  But Defendant never pauses to acknowledge the impact its violations of this law have on its low-wage employees.  This is coming from a perspective of considerable privilege:  Defendant's counsel and its management thankfully may not have experience in what it is like living paycheck to paycheck.  But struggling to make ends meet is a reality for most Americans and a lack of timely access to wages has given rise to a massive payday loan industry in the United States.  According to the Federal Reserve, "[f]orty-six percent of adults say they either could not cover an emergency expense costing $400, or would cover it by selling

something or borrowing money."[3]  According to Defendant, being paid in full yet late is no big deal, but its low-wage manual workers would certainly beg to differ.  Prompt access to their wages could mean the ability to avoid getting their telephones, electricity, or utilities shut off.  Or to avoid going into debt.  Or to be able to buy their child a birthday present.  As the Court of Appeals has explained, this law was "intended for the protection of those who are dependent upon their wages for sustenance."  *People v. Verti*, 309 N.Y. 401, 405 (1955).  These are real people that suffer real consequences from wage violations.  If other businesses can follow the law, so can Defendant.

Even Defendant would have a hard time disputing this: without a private right of action, this lawsuit would have never been filed, and Defendant would simply continue violating its employees' statutory rights.  And if this motion is granted, it will continue to do just that.  (Subject to, of course, the nearly-meaningless threat of being fined $1,000 from the Department of Labor, which Defendant itself admits is "at worst … modest."  MTD at 13).

## III.   THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191

In perfunctory fashion, Defendant claims "*Vega*'s holding is also inconsistent with the legislative histories of Section 191 and 198(1-a)."  MTD at 12.  But that is incorrect.  *Vega*'s holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191," 175 A.D.3d at 1146, is well-supported by legislative history, guidance from the New York Department of Labor, case law interpreting analogous provisions of the Fair Labor Standard Act, and common sense.

---

[3] Kopel Decl., Ex. 2, Report on the Economic Wellbeing of U.S. Households in 2015, Board of Governors of the Federal Reserve System, *available at* https://www.federalreserve.gov/2015-report-economic-well-being-us-households-201605.pdf.

**A.    Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages**

NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in Article Six.  In *Vega*, the First Department noted the obvious:  late payment of wages is a type of wage claim.  *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")).  The legislative comments to the Labor Law show that *Vega* was right.  Claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and enacting a new version which provides the basis for the current law in place today.  A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization."  Kopel Decl., Ex. 3, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).[4]  In referring to laws governing the frequency of payments to manual workers as "wage payment provisions," the language of the memorandum cuts against Defendant's argument that claims under these provisions are "non-wage" claims.  *See* MTD at 12-13.

In 1967, the Legislature enacted Section 198, allowing for a private cause of action with a liquidated damages provision.  According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on

---

[4] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1966-CH-0548.pdf.

employers for violation of those laws."   Kopel Decl., Ex. 4, Memorandum of the Industrial
Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16).[5]  Again, there is no reason
to believe that a statute meant to cover "wage payment laws" was intended to be construed in a
manner that it should not cover the "wage payment provisions" from one year earlier.

To the contrary, the memorandum makes clear that the purpose of the liquidated damages
provision of the bill as to "compensate the employee for the loss of the use of the money to which
he was entitled." Kopel Decl., Ex. 4, pp. 5 of 16.  That is the *precise* injury experienced by workers
receiving their wages late.   And in a section titled "arguments in support of the bill," the
memorandum explains that bill sought to remedy a scenario where employers "will have had the
free use of their employees' money for some time and their employees will have been seriously
inconvenienced.  The calculation of interest on the money due would be difficult as it would have
accrued in small amounts week by week.  This bill follows the example of the Federal Fair Labor
Standards Act in providing an easily-calculable formula for liquidated damages."  This shows a
legislative intent for the liquidated damages provision to be used as a replacement for small
amounts of weekly interest lost.

The 1967 Memorandum makes clear that the Legislature considered and rejected
Defendant's argument that the law would subject employers to "ruinous liability."  MTD at 3. It
notes that "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."
Kopel Decl., Ex. 4, pp. 5 of 16.  However, the liquidated damages provision was passed anyway
in the hopes that it "would establish one more safeguard to assure employees or proper payment
of wages under the law and would thus be a deterrent against abuses and violations."  Kopel Decl.,
Ex. 4, pp. 13 of 16.  This extra "safeguard" was sorely needed.  Defendant's complaint that

---

[5] *Available at* https://nysl.ptfs.com/data/Library1/pdf/NY200060392_L-1967-CH-0310.pdf

"hundreds of claims" have been filed in New York only goes to show just how widespread noncompliance with the law was.  *See* MTD at 1.

Defendant argues that "[t]here is no indication that the Legislature intended this provision to impose a penalty on employers that paid their employees' wages in full, but did so on a biweekly rather than weekly pay cycle."  MTD at 12.  But the Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled."  Kopel Decl., Ex. 4, pp. 5 of 16.  Against this backdrop, Defendant's insistence that this provision was not intended to cover the rules ensuring that workers would receive prompt access to their money is absurd.

### B.    Wages Become "Unpaid" If They Are Not Paid When Due

Defendant claims "when an employee is paid their full wages on a biweekly schedule, there are no unpaid wages remaining for the employee to 'recover' or that 'remain due.'"  MTD at 11. That is wrong.  There is no meaningful difference between late payment and nonpayment – at the end of the first week of each biweekly pay period, Defendant failed to pay Plaintiff's wages.  That is nonpayment.  The "underpayment" and "amount due" at that time was the entire week's pay. The First Department explained this:  "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."  *Vega*, 175 A.D.3d at 1146.  Any holding otherwise would allow an employer to "cure a violation and evade the statute by paying the wages that are due before the commencement of an action."  *Id.* at 1145.

As the Ninth Circuit explained when rejecting this same argument in the FLSA context, "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either… Any kind of

sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'" *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993).

The Ninth Circuit was right, and its rationale is equally applicable here.  Defendant does not and cannot explain any distinction between late payment and nonpayment.  How long must an employee wait until a purported late payment becomes nonpayment, and how are courts meant to draw such a distinction?  Would a claim by an employee whose wages were withheld for three weeks, three months, or three years still be a non-wage claim for late payment?  According to Defendant, the answer would be yes.  Under this interpretation, the liquidated damages provision of Section 198 (1-a), intended to deter violations of the statute, could never be imposed for nonpayment of wages so long as payment was made prior to commencement of a lawsuit.  Indeed, that was the holding of the Trial Court in *Global Aircraft* decision, upon which Defendant relies. *See Global Aircraft,* 2021 WL 6777500, at *3 (N.Y. Sup. Queens Cty. Apr. 20, 2021) (holding that the plaintiff had no private claim because "all wages due were paid prior to the commencement of this action").  That makes no sense and undermines the entire purpose of the statue.  *See Biggs,* 1 F.3d at 1539 ("If a payday has passed without payment, the employer cannot have met his obligation to 'pay' … unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless.").

### C.    The New York Department Of Labor Has Explicitly Held That A Private Right Of Action Exists

Defendant argues that no private right of action exists because the New York Department of Labor ("DOL") "has consistently prosecuted frequency of pay claims as non-wage matters." MTD at 13.  But this argument is belied by the DOL's explicit holding that a private right of action exists.  Indeed, in an October 28, 2010 Opinion Letter, the DOL reiterated that NYLL § 191 is

enforceable by a private right of action.  *See* Kopel Decl., Ex. 5, RO-10-0003.[6]  In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that while an employer could require an employee to sign off on the time sheet, the employee's signature "neither relieves the employer of its obligations under []Section [191], nor does it prevent an employee from filing a complaint with this Department or *bringing an action for a violation of [NYLL § 191.]*"  *Id.* at pp. 4 (emphasis added).  Thus, it is the view of New York's DOL that employees are empowered to bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute."  *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988).  Therefore, the DOL's October 28, 2010 opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

Defendant argues that the DOL does not believe that a private right of action exists because the DOL's "Complaint Form lists frequency-of-pay claims as a 'non-wage complaint.'"  MTD at 13 n.10.  That is a silly argument.  The organization of a claim form is neither an opinion nor interpretation.  The DOL has a means of expressing legal opinions: in opinion letters.  And when it addressed this issue in an opinion letter, it stated that a private right of action exists.[7]

---

[6] *See*
https://statistics.labor.ny.gov/legal/counsel/pdf/Direct%20Deposit%20of%20Wages/Direct%20Deposit,%20Meal%20Breaks%20and%20Child%20Labor%20-%20RO-10-0003.pdf.

[7] Defendant also cites a decision from the Industrial Board of Appeals, but that decision does not examine the issue of a private right of action whatsoever.  *See* MTD at 13 (citing *Ribble (d/b/a Perfecto Cleaners)*, PR No 06-038, 39 (Indus. Bd. Of Appeals, Dec. 19, 2007).

## IV.    NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION

Defendant argues that finding a private right of action "is irreconcilable with the New York

Court of Appeals' recent decision in *Konkur v. Utica Academy of Science Charter Sch.*, 38 NY3d

38 (2022)."  MTD at 13.  As an initial matter, this argument is inapplicable to *Vega*'s holding that

an express right of action exists and is therefore moot to the extent that the Court follows that

holding.  More importantly, Defendant neglects to mention that this exact argument—along with

its reliance on *Konkur*—has been squarely rejected in the NYLL § 191 context by *Elhassa v.*

*Hallmark Aviation Servs., L.P.*, 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) and *Mabe v. Wal-Mart*

*Assocs., Inc.*, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022).

Specifically, the Court in *Mabe* held as follows:

> To the extent Defendant contends that the statute already provides
> an administrative mechanism to enforce Section 191 violations, the
> legislative history reflects the administrative nature of the Section
> 191 scheme, and that there is no private right of action in § 198 for
> a mere untimely payment of wages, *Vega* addressed those concerns.
> The *Vega* Court found that the purposes of Sections 191 and 198 are
> to protect employees who are "dependent upon their wages for
> sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at
> 1146 (citation omitted). "And contrary to defendants' emphasis on
> administrative enforcement, Section 198 lets an individual sue even
> where the administrator declines," *Caul*, 2021 WL 4407856, at *3
> (citing Vega, 175 A.D.3d at 1147), which the *Vega* Court found to
> be "consistent with the legislative scheme, as section 198 explicitly
> provides that individuals may bring suit against an employer for
> violations of the labor laws, even if the Commissioner chooses not
> to do so." *Vega*, 175 A.D.3d at 1147.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question in *Konkur*

had to do with the implication of a private right of action [under Labor Law § 198–b, which

prohibits wage kickbacks]. *Vega* rested on a different ground.'")).

Accordingly, Defendant's argument is without merit and should be rejected.  *See Sorto*,

2020 WL 8413553, at *2 ("Moreover, as the courts in *Vega* and *Scott* recognized, this conclusion

is consistent with an implied private of action under section 191, even if the statute may not fairly be read to expressly provide one."); *Caul*, 2021 WL 4407856, at *3 ("Defendants contend that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and the purpose of Section 191 is 'to ensure that employers make payroll payments at all.' But *Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are 'dependent upon their wages for sustenance' and deter labor law violations. And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines.") (internal citations omitted).

## V.   THE CANNON OF CONSTITUTIONAL AVOIDANCE IS INAPPLICABLE HERE

Defendant argues that "Vega's holding is incompatible with constitutional considerations" and that the Court should decline to follow *Vega* because supposed "astronomical penalties" would implicate Due Process and the Eighth Amendment.  MTD at 14-15.  Defendant is wrong.  Any argument about the constitutionality of damages (especially on a class-wide basis) at this point is speculative and premature.  But even if the Court agreed that damages were excessive, the remedy would be to reduce damages at the judgment stage, not give Defendant a get-out-of-jail-free card for violating NYLL § 191.  Defendant's argument is unsupported by any authority whatsoever.

In fact, this exact argument was recently rejected by Judge Kovner in *Rodrigue v. Lowes Home Ctrs., LLC*, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021) (internal citations omitted). There, the court held:

> [A] challenge of this sort is premature.  At this stage of the case, there has been no liquidated damages award, and there is no record on which to assess whether an award would be excessive … Even if defendants were correct that liquidated damages equal to "the amount of all late payments" would violate the Due Process Clause,

> defendants have offered no reason why they would be entitled to dismissal of plaintiff's claim—rather than a reduction in damages.

Judge Kovner was right, and this Court should adopt the same position.  The Second Circuit has explained that arguments whether damages are constitutionally excessive "remain hypothetical" where "[t]here has been no class certification motion filed nor any actual evidence that raises a reasonable possibility that principles of due process may restrict an ultimate damages award" and courts should therefore "decline to consider what limits the due process clause may impose" at such an early stage.  *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2nd Cir. 2003).  Indeed, courts have held that "challenges under the Excessive Fines Clause are ... generally not ripe until the actual, or impending, imposition of the challenged fine."  *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 195 (S.D.N.Y. 2019).

Defendant also cites "the canon of constitutional avoidance," under which a court should construe an ambiguous statute to avoid constitutional problems if a viable alternative interpretation exists.  *U.S. v. Awadallah*, 349 F.3d 42, 55 (2d Cir. 2003).  But that is inapplicable.  First, "the canon of constitutional avoidance … has no application in the absence of statutory ambiguity."  *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 134 (2002).  Here, no such ambiguity exists.  As Judge Kovner explained, "[t]here is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed wage payments under the NYLL."  *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 6805889, at *1 (E.D.N.Y. Dec. 22, 2021).  Because there is no ambiguity, there is no basis to invoke the canon of constitutional avoidance.

Finally, even if there were statutory ambiguity, Defendant's argument would still not apply.  That is because "the canon … applies only when there are serious concerns about the statute's constitutionality."  *Harris v. U.S.*, 536 U.S. 545, 555 (2002) *overruled on other grounds by Alleyne v. U.S.*, 570 U.S. 99 (2013).  Defendant does not even attempt to argue that there are any concerns

about the statute's constitutionality.  Rather, it argues only that an award of liquidated damages would be unconstitutional, which would not give rise to a judicial invalidation of the entire statute.

## VI.    PLAINTIFF IS A MANUAL WORKER

Defendant claims Plaintiff is not a manual worker under New York Labor Law because his job description of "retail store employee … does not meet the [NYLL] definition" of "manual worker."  MTD at 15.  That is incorrect because "[i]t has been [the New York Department of Labor's] longstanding interpretation of the term 'manual workers' that the term includes more than 25 percent of their working time performing physical labor."  Kopel Decl., Ex. 6, N.Y. Dep't of Labor Opinion Letter RO–09–0066.[8]; *accord Gonzales v. Gan Israel Pre-School*, 2014 WL 1011070, at *12 (E.D.N.Y. March 14, 2014).  And according to the New York Department of Labor ("NYDOL"), "the term 'physical labor' has been interpreted broadly to include countless physical tasks performed by employees."[9]

"For example, in N.Y. Dep't of Labor Counsel Opinion Letter RO–08–0061, the agency discussed that pizzeria workers would qualify as 'manual workers' if they spent more than 25 percent of their time 'lifting and carrying large bags of flour, heavy pitchers of water, and boxes filled with tomatoes, sauce, cheese and other ingredients; cleaning and operating of dough mixing equipment; preparing dough for proofing and stacking and moving proofing racks; and cleaning of the prep area, pots and pans, and the food service area and floors at the end of the day." *Gonzalez*, 2014 WL 1011070, at *13; *see also Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (Defendants argue that section 191(1)(a) is inapplicable to Plaintiff because he is not a manual worker. Defendants are mistaken: "Cooks and wait staff ... are classified as

---

[8] *See* https://statistics.labor.ny.gov/legal/counsel/pdf/Other/RO-09-0066%20Manual%20Workers.pdf
[9] *See* https://dol.ny.gov/system/files/documents/2021/03/frequency-of-pay-frequently-asked-questions.pdf

'manual workers' under [New York Labor Law].") (citing N.Y. Dep't of Labor Counsel Opinion Letter RO–08–0139, Dec. 1, 2008).

Plaintiff has sufficiently alleged engaging in similar types of manual labor for more than 25% of his job responsibilities at Levi Strauss.  *See* FAC ¶ 11 ("More than 25% of Plaintiff's job responsibilities included manual labor, including tasks such as unpacking, stocking and organizing inventory, folding clothes, and tending to fitting rooms.").  Retail store employees—such as Plaintiff—whose job responsibilities include engaging in physical labor during more than 25% of their jobs qualify as manual workers under the NYDOL's definition.  *See Beh v. Community Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) ("By this criterion, carpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be 'manual workers.'") (collecting cases).  Accordingly, Plaintiff has sufficiently alleged he is a manual worker under New York Labor Law.[10]

## VII.  DEFENDANT'S REQUEST FOR A STAY SHOULD BE DENIED

### A.  The *Mabe v. Wal-Mart* and *Grant v. Global Aircraft* Appeals Are Without Merit

In the alternative, Defendant asks the Court to stay this action pending the petition for interlocutory appeal in *Mabe v. Wal-Mart Associates, Inc.* and the appeal in *Grant v. Global Aircraft Dispatch, Inc.*  MTD at 17-19.  The Court should decline because it is extremely unlikely, and speculative at best, that either of these cases will result in a decision that changes any of the Court's considerations in resolving this matter.

---

[10] As discussed herein, the court in *Zara* recently denied the defendant's motion to dismiss.  Zara, like Levi's, is a clothing retail store and in *Zara*, the plaintiff alleged that "during his employment, over twenty-five percent of [his] duties were physical tasks, including but not limited to (1) moving shipment boxes; (2) lifting and stacking boxes; (3) opening boxes; (4) placing clothes on shelves and; (5) price tagging clothes."  *Gillett v. Zara USA, Inc.*, Case No. 1:20-cv-03734, ECF No. 47, ¶ 63 (First Amended Complaint).  The court also denied the motion to dismiss in a § 191 case again another clothing retailer, Banana Republic.  *See, e.g.*, Kopel Decl., Ex. 8.

First, in *Wal-Mart*, there is no actual appeal pending, and there is no reason to believe that the Second Circuit will ever hear the case.  All that happened was that the Defendant lost the motion to dismiss and asked the court for permission to appeal.  It is unlikely that such permission will be granted.  The defendant in *Caul v. Petco* sought interlocutory appeal based on the same arguments as the defendant raises in *Mabe*:  whether plaintiff has a private right of action and whether plaintiff has Article III standing.  Judge Kovner denied the defendant's motion because "**[t]here is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed waged payments under the NYLL.**"  *Caul*, 2021 WL 6805889, at *1 (emphasis added).  She further held "there is not ground for substantial difference of opinion about whether the temporary deprivation of money to which a plaintiff has a right is a sufficient injury to establish standing. The cases cited by defendants in support of the proposition that the temporary loss of money is too speculative an injury to support Article III standing, *see* Mot. to Certify at 9-10, are overshadowed by better reasoned and more recent cases.").  *Id.* at *2.  Thus, it is speculative at best to think that the issue will ever be heard by the Second Circuit in *Walmart*.

Second, *Grant* is not controlling.  In the highly unlikely event that the Second Department parts with the unanimous decision of the First Department in *Vega* and every federal court to consider the issue since then, that would only indicate a split.  *See Zomba Recording LLC v. Chen*, 2009 WL 1011644, at *3 (N.D.N.Y. Apr. 15, 2009) (declining to stay case pending resolution of another action which "will not be binding precedent in the Second Circuit").  Moreover, as mentioned *supra*, *Grant* was wrongly decided because the court was unquestionably bound by the holding in *Vega*, which it was not made aware of.  *See Article 70*, 16 N.Y.S.3d at 916 ("State trial courts must follow a higher court's existing precedent even though they may disagree.").  It is entirely possible that the Second Department will dispose of the case on those grounds alone.

**B.      The Relevant Factors Weigh Against A Stay**

Defendant offers a brief analysis in support of a stay under the factors set forth in *Kappel v. Comfort*, 914 F. Supp. 1056 (S.D.N.Y. 1996).[11]  First, Defendant claims "Plaintiff's interests will not be harmed" by a stay.  MTD at 18.  Not so.  Defendant is asking the Court for a multi-year stay pending the outcome of two Hail Mary appeals, and "Plaintiffs have a substantial interest in proceeding expeditiously with this litigation."  *GTFM, Inc. v. Park*, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002); *In re Health Mgmt., Inc.*, 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 15, 1999) ("The ability of courts to avoid undue delay is essential to assur[e] that justice for all litigants be neither delayed nor impaired.").  Next, Defendant claims it will be "prejudiced in the absence of a stay" because it will be forced to participate in discovery.  MTD at 19.  But this is a simple case asserting a single claim.  Discovery in this case will largely consist of Plaintiff's job duties and Defendant's payroll data over the class period.

As for the remaining three factors, Defendant argues "awaiting the outcomes of the pending appeals serves the interest of this Court, the public interest, and persons who are not party to this action.  MTD at 19.  But "[t]he Court has a substantial interest in proceeding with this action while its knowledge of the underlying facts is still fresh."  *GTFM*, 2002 WL 31890940, at *2.  To the contrary, under the circumstances, "staying the case would merely delay litigation and likely result in greater inefficiencies to the Court and litigants."  *Laumann v. Nat'l Hockey League*, 2013 WL 837640, at *3 (S.D.N.Y. Mar. 6, 2013).

Dated: September 1, 2022                                     Respectfully submitted,

                                                                              By:  ___/s/ Yitzchak Kopel___

---

[11] *See id.* at 1058 ("(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.").

Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
        aleslie@bursor.com

*Counsel for Plaintiff*